BRIDGEWATER TOWNSHIP v WASHTENAW COUNTY BOARD
OF COMMISSIONERS

Docket No. 46817. Submitted February 6, 1981, at Lansing.—Decided
May 5, 1981.

The townships of Bridgewater, Freedom, Lima, Lyndon, Manches-
ter, Saline, and Ypsilanti and the City of Saline, in Washtenaw
County, petitioned the Michigan Tax Tribunal for review of an
equalization decision by the Washtenaw County Board of Com-
missioners regarding the value of agricultural lands within the
townships. The City of Milan moved to intervene on behalf of
respondent board, which motion was granted. The Tax Tribu-
nal, following a hearing, upheld the board's decision. All peti-
tioner townships, except Ypsilanti Township, appeal, alleging
that the Tax Tribunal erred in affirming the board's decision to
adopt one of three plans offered to accomplish the equalization
which was unfair, inequitable, and discriminatory. The Town-
ship of Ypsilanti and the City of Saline joined the original
respondents and asked for affirmance of the tribunal's decision.
*Held:*

The Tax Tribunal properly affirmed the decision of the board.
The record reveals that the decision of the Tax Tribunal was
supported by competent, material, and substantial evidence and
that the plan adopted by the board was fair, equitable, and
nondiscriminatory. The board found, pursuant to its statutory
charge, that agricultural land within the county was underas-
sessed and adopted a plan which, in the judgment of the
commissioners, equalized the assessments to represent the true
cash value of the property. The Tax Tribunal, applying the
statutory standards for review of the board's decision, found
that the plan adopted by the board was the best solution under
the circumstances, that no bad faith on the part of the board
was shown, and that the plan was fair, equitable, and nondis-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 71 Am Jur 2d, State and Local Taxation § 125.
  72 Am Jur 2d, State and Local Taxation §§ 799, 831.
[2] 72 Am Jur 2d, State and Local Taxation §§ 787, 820, 827.
[3] 72 Am Jur 2d, State and Local Taxation § 787.
[4] [No Reference].

criminatory. The alternate plan offered by the townships would have caused a large percentage of the agricultural underassessment to have been absorbed by nonagricultural units.

Affirmed.

1. Taxation — Tax Assessments — County Boards of Commissioners — Equalization of Assessments — Statutes.

It is the duty of county boards of commissioners to examine the tax assessment rolls of the townships or cities within their counties and to ascertain whether the assessments of real and personal property represent true cash value, and if a board considers assessments within a township or city to be unequal it must equalize the assessments by adding to or deducting from such valuations an amount which, in the judgment of the board, will produce a sum representative of the true cash value (MCL 211.34[2]; MSA 7.52[2]).

2. Taxation — Tax Tribunal — Tax Assessments — Appeal — Statutes.

Appeal of an assessment equalization by a county board of commissioners may be made to the state Tax Tribunal which, following a hearing, must determine whether the equalization is unfair, unjust, inequitable, or discriminatory and fix a valuation on all property within a county (MCL 211.34[4]; MSA 7.52[4]).

3. Taxation — Courts — Tax Tribunal — Appeal.

The Court of Appeals, in considering an appeal of a decision from the state Tax Tribunal, is bound by the factual determinations of the tribunal and may consider questions of law only.

4. Taxation — Tax Tribunal — Appeal.

A decision of the state Tax Tribunal which is not supported by competent, material, and substantial evidence constitutes an error of law.

*Keusch & Flintoft,* for petitioners.

Office of Corporation Counsel for Washtenaw County (by *Robert E. Guenzel),* for Washtenaw County Board of Commissioners.

*Allan W. Grossman,* Saline City Attorney, for the City of Saline.

*Collins & McCormick,* for the Township of Ypsilanti.

Danny L. Smith, Milan City Assessor, *in propria persona,* for the City of Milan.

Before: DANHOF, C.J., and R. M. MAHER and BEASLEY, JJ.

BEASLEY, J. Appellants, six townships located in Washtenaw County, petitioned the Michigan Tax Tribunal for review of an equalization decision by the Washtenaw County Board of Commissioners for the year 1979. After the tribunal upheld the county equalization plan, the townships appealed as of right.

In October, 1978, the State Tax Commission completed a sales ratio study for agricultural lands in Washtenaw County. This study, which was based on sale prices of 139 parcels in the county, was sent to George Kostishak, director of the Washtenaw County Equalization Department.

The county equalization department had done its own study of agricultural assessments in Washtenaw County. The county study used a mixed appraisal/sales ratio approach in determining total agricultural value. The county equalization staff made 318 appraisals and compared them against selected sales for verification of the accuracy of the appraisals. The study was intended to examine agricultural values in each assessing unit and determine if the assessments in that unit were satisfactory.

On December 31, 1978, Kostishak filed the study done by the Washtenaw County Equalization Department with the State Tax Commission showing an $80,000,000 difference between the estimate of true cash value in agricultural lands reached by

the county and that reached by the state. Using the results from the county study, the county equalization department recommended tentative factors for each assessing unit in the county. Local assessors revised their rolls and when their final rolls were submitted to the county all but one unit, Lyndon Township, had increased assessments following the county's recommendation which brought each unit up to the level recommended.

During this period of time, Kostishak met with staff members of the State Tax Commission in an attempt to persuade them to revise their estimate of the true cash value of agricultural land by using sales other than the ones used in the study. Kostishak also hoped to eliminate some of the discrepancy by what is called "sloughing". The State Tax Commission has provided that any assessment roll that is assessed to 49% of true cash value shall be conclusively presumed to be 50% of true cash value where certain requirements are met. If a unit within a county is assessed at between 49% and 50% of true cash value, while other units are assessed at less than 49%, the units, when added together, may produce an average assessment of greater than 49%. For example, a county containing two assessing units equal in true cash value, one assessed at 50% and the other assessed at 48%, has an average assessment of 49%.

Thus, without assessing any unit at greater than 50%, a county can generally reduce the amount of underassessment found by the State Tax Commission. The technique is disapproved by the State Tax Commission, however, when it is deliberately used to leave some units obviously underassessed. This policy recognizes that "sloughing" can be used as a discriminatory tool in the hands of the

county board of commissioners when determining county equalization.

In his recommendations to the county board, Kostishak intended to use "sloughing" to eliminate some of the discrepancy between the State Tax Commission's estimate of total cash value of agricultural land and that of the county. The State Tax Commission indicated to Kostishak that an attempt to "slough" by adding value to the assessments of the cities in Washtenaw County would not be approved. The State Tax Commission had determined that other classes of property (*i.e.,* commercial, industrial, residential) were properly assessed at 50% of true cash value. Any attempt to "slough" by adding value to the cities, which had no agricultural land, would discriminatorily underassess agricultural land.

By April, 1979, it had become clear to Kostishak that the failure to add agricultural value in the county equalization order would result in the county receiving a state equalization factor greater than 1.0. At that time, he had been told that the discrepancy was approximately $55,000,000. On April 4, 1979, he held a meeting with local assessors to discuss the problem and determine how the county board of commissioners could equalize the county assessments to add the agricultural value to those units containing agricultural lands. Prior to the meeting of the county board of commissioners to finalize county equalization, Kostishak received a final figure based on the State Tax Commission study, indicating that the State Tax Commission study had found county agricultural lands underassessed by $50,063,949.

Kostishak presented three plans, labeled A, B, and C, to the county board of commissioners. He recommended plan B as the most equitable plan.

Plan A could be referred to as the "do nothing" plan. It would use the preliminary results as found by the county equalization department and as met by the local assessors in revising their rolls. If this had been done, there was little question that the State Tax Commission, sitting as the State Board of Equalization, would assign a factor of greater than 1.0 to Washtenaw County real property as a whole to spread the $50,063,949 of agricultural property underassessment to every unit in the county in proportion to its share of the total true cash value of real property.

Plan C closely resembles plan A. Under plan C, the county board would itself spread the $50,063,-949 to every unit in the county in proportion to its share of total true cash value of real property. Under this plan, a very large share of the $50,063,-949 would be added onto assessments of city properties. Thus, the underassessment of agricultural lands would necessarily result in increased assessments for residential, commercial, and industrial properties.

The county board of commissioners adopted plan B which apportioned the $50,063,949 according to each township's percentage of total county agricultural land value as determined by the county equalization department's study.

The Michigan Tax Tribunal unanimously affirmed the Washtenaw County Board of Commissioners' decision to adopt plan B in three separate opinions issued from the bench.

Appellants contend that the Tax Tribunal erred by approving the equalization order of the Washtenaw County Board of Commissioners. They argue that the commissioners' decision to use the results of the county equalization department's study to apportion the agricultural underassessments re-

sulted in assessments exceeding 50% of true cash value for some townships and that this decision was a political one which benefitted the cities and urban townships to the detriment of the rural townships. Appellants claim that the $50,063,949 in added value should have been allocated between the agricultural townships using the State Tax Commission study as a unit-by-unit study. If that could not be done, they contend that all units in the county should have shared the burden.

The county board of commissioners' equalization decision is governed by MCL 211.34; MSA 7.52 which provides in pertinent part as follows:

"The county board of commissioners shall examine the assessment rolls of the townships or cities and ascertain whether the real and personal property in the respective townships or cities has been equally and uniformly assessed at true cash value. If, on the examination, the county board of commissioners considers the assessments to be relatively unequal, it shall equalize the assessments by adding to or deducting from the valuation of the taxable property in a township or city an amount which in the judgment of the county board of commissioners will produce a sum which represents the true cash value of that property, and the amount added to or deducted from the valuations in a township or city shall be entered upon the records."

This statute also provides the standard to be used by the state Tax Tribunal in reviewing a county equalization decision. At the time relevant to this appeal, it provided in pertinent part:

"The state tax tribunal shall, upon hearing, determine if in its judgment there is a showing to the effect that the equalization complained of is unfair, unjust, inequitable, or discriminatory. The state tax tribunal shall have the same authority to consider and pass upon the action and determination of the county board

of commissioners in equalizing valuations as it has to consider complaints relative to the assessment and taxation of property. The state tax tribunal may order the county board of commissioners to reconvene and to cause the assessment rolls of the county to be brought before it, may summon the commissioners of the county before it to give evidence in relation to the equalization, and may take further action and may make further investigation in the premises as it considers necessary. The state tax tribunal shall fix a valuation on all property of the county. If the state tax tribunal shall decide that the determination and equalization made by the county board of commissioners is correct, further action shall not be taken."

On appeal, this Court is bound by the factual determinations of the state Tax Tribunal and may consider only questions of law.[1] It is an error of law if a decision of the state Tax Tribunal is not supported by competent, material, and substantial evidence.[2]

In their separate opinions issued from the bench, all three Tax Tribunal members found that the State Tax Commission countywide study was not valid for applying value on a unit-by-unit basis. They were also in unanimous agreement that plan B, under which the $50,063,949 countywide agricultural underassessment found by the State Tax Commission study was apportioned to each township according to its percentage of total agricultural land value as determined by the county equalization department study, put the underassessed agricultural value back into the units that had been underassessed and was the best solution under the circumstances.

---

[1] Const 1963, art 6, § 28; *Kern v Pontiac Twp*, 93 Mich App 612, 620; 287 NW2d 603 (1979).

[2] *Fisher-New Center Co v State Tax Comm (On Rehearing)*, 381 Mich 713, 715; 167 NW2d 263 (1969).

Two members of the tribunal found that the county equalization study led to uniformity between the units within the county, or was "uniformly conservative" in comparing values. Two members also stated that they found no showing of bad faith and that the plan adopted was fair, equitable, and nondiscriminatory.

A review of the record convinces us that the Tax Tribunal's decision to approve the adoption of plan B by the Washtenaw County Board of Commissioners is supported by competent, material, and substantial evidence. Appellants' claim that the $50,063,949 underassessment in agricultural land values should have been apportioned between units using the State Tax Commission study must fail in light of the unanimous finding of the tribunal that this countywide study was not valid for applying values on a unit-by-unit basis.

Appellants' alternative suggestion to apportioning the $50,063,949 underassessment of agricultural land values between all of the units in the county, regardless of whether or not they contained any agricultural land, would have caused a large percentage of this agricultural underassessment to have been absorbed by nonagricultural units. The result in the present case is in accord with the reasoning of the Michigan Tax Tribunal in *Montcalm Twp v Montcalm County Board of Comm'rs,*[3] where the tribunal held:

"Also, instead of adding 25% to the value of the agricultural class, the county only added 12.5%. The resulting 12.5% which was added by the STC in arriving at the SEV (state equalized value) was therefore spread against all the units in proportion to their percentage of county total. This method of distribution and allocation shifts value erroneously to the various

[3] Michigan Tax Tribunal, Docket No. 15191, p 3 (March 30, 1977).

governmental units of the county and if allowed to stand, would be most inequitable and of course is the root cause of Petitioner's appeal. For example, the cities in Montcalm County constituted 21.5% of the county total and thus have received an increase in equalized value which arose from agricultural value determinations from the various townships. This constitutes an arbitrary distribution as units in the county would receive an additional amount whether they deserved it or not."

We agree with the Tax Tribunal that the decision of the Washtenaw County Board of Commissioners to adopt plan B was fair, equitable, and nondiscriminatory. Faced with the necessity of apportioning the $50,063,949 agricultural underassessment, the commissioners used the county equalization study to apportion this burden among the agricultural townships.

While the commissioners' decision may have resulted in some townships receiving assessments of over 50% true cash value according to the county equalization study (which did not include the $50,063,949 countywide agricultural underassessment) and the State Tax Commission study (which was found not to be valid for applying value on a unit-by-unit basis), it was a fair method of distributing the burden of the countywide underassessment in agricultural values only among those units which had such values.

Nor do we believe that plan B constituted an improper equalization by class.[4] This plan added value to units containing agricultural land, and the value was spread across the entire unit, regardless of class.

Affirmed. No costs, a public question being involved.

---

[4] We note that 1979 PA 114(2), effective March 27, 1980, mandates equalization by class beginning December 31, 1980. MCL 211.34; MSA 7.52.